[No. S071500. July 29, 1999.]

THOMAS A. BOCKRATH, Plaintiff and Appellant, v.
ALDRICH CHEMICAL CO., INC., et al., Defendants and Respondents.

74

**COUNSEL**

Law Offices of Raphael Metzger, Raphael Metzger and James W. Parker for Plaintiff and Appellant.

Wartnick, Chaber, Harowitz, Smith & Tigerman, Harry F. Wartnick, Phillip Scott Chan; James Sturdevant; Ian Herzog; Sharon Arkin; Deborah A. David; Lea-Ann Tratten, Joseph F. Harbison III; Moses Lebovits; David A. Rosen; Daniel U. Smith; and Christine D. Spagnoli for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Anderson, McPharlin & Conners and Thomas J. Casamassima for Defendant and Respondent Smooth-On, Inc.

Arter & Hadden, Paul D. Hesse, Frederick J. Ufkes, Aaron M. Peck, Erik L. Jackson; Musick, Peeler & Garrett and Paul D. Hesse for Defendant and Respondent IIT Research Institute.

Baker & Hostetler, Richard A. Deeb, Crantson J. Williams; Gray Cary Ware & Freidenrich, Don G. Rushing, Mary A. Lehman and Sara L. Cohen for Defendant and Respondent ICI Composites Inc.

Belofsky & Jenkins and Charles W. Jenkins for Defendants and Respondents Allied Products Corporation and Insulating Materials, Inc.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Mark B. Connely and Alexander B. T. Cobb for Defendants and Respondents Chemical Technology Laboratories, Inc., Structural Polymer Systems, Tapmatic Corporation, the Texwipe Company and Union Rubber, Inc.

Booth Mitchell & Strange, Kevin Callahan and Daniel M. Crowley for Defendant and Respondent Whittaker Corporation.

Brownwood, Rice & Zurawski, Luna, Brownwood & Rice and Robert S. Rucci for Defendant and Respondent Roly International, Inc.

Burke, Williams & Sorensen, Deborah C. Prosser, Jeffrey J. Lewis; Landels Ripley & Diamond, Sanford Svetcov; Thomas, Mort, Prosser & Knudsen and Peter A. Schneider for Defendant and Respondent General Electric Company.

Dale, Braden & Hinchcliffe and Bruce C. Gridley for Defendant and Respondent Ablestik Labs.

Federman, Gridley & Gradwohl and Bruce Gridley for Defendants and Respondents Steco Corporation and Chem-Trend, Inc.

Feldman & Shaffery, Poole & Shaffery, John Shaffery and Samuel L. Tolwin for Defendants and Respondents Illinois Tool Works, Inc., and Loctite Corporation.

Ford, Walker, Haggerty & Behar and Maxine J. Lebowitz for Defendant and Respondent Steco Corporation.

Hawkins, Schnabel, Lindahl & Beck, Laurence H. Schnabel and Laura E. Hogan for Defendant and Respondent Dupli-Color Products Company, Inc.

Howard, Moss, Loveder, Strickroth & Walker, Theodore R. Howard and Margaret M. Parker for Defendant and Respondent Air Products & Chemicals, Inc.

Jeffrey S. Pop & Associates, Jeffrey S. Pop and Richard S. MacNaughton for Defendant and Respondent Columbia Aluminum Products.

Kirtland & Packard, Jeffrey M. Anielski and Paul R. Cotter for Defendant and Respondent Crest Products Corporation.

Knapp Petersen & Clarke, Kolts & Nawa and Raymond G. Kolts for Defendants and Respondents Aldrich Chemical Co., Inc., Sigma-Aldrich Corp. and Polysciences, Inc.

Lewis, D'Amato, Brisbois & Bisgaard, John H. Shimada, Steven R. Lewis and Judith A. Zipkin for Defendants and Respondents MTM Research Chemicals, Inc., and WD-40 Company.

McMillan & Jennings and Robert H. McMillan for Defendant and Respondent Minnesota Mining and Manufacturing Company.

Mendes & Mount, James W. Hunt, Richard R. Nelson, Marilyn M. Gates and Dennis S. Morris for Defendant and Respondent Turco Products, Inc.

Nelson & Teuber and Rolf F. Teuber for Defendant and Respondent Monomer-Polymer and Dajac Laboratories, Inc.

O'Neill, Lysaght & Sun and J. Joseph Connolly for Defendant and Respondent Ferro Corporation.

Parker, Milliken, Clark, O'Hara & Samuelian, Asteghik K. Brock, Stephen T. Holzer and Michael D. Stevens for Defendant and Respondent Chem-Trend, Inc.

Perkins Coie, Ronald A. McIntire, Mark J. Goldzweig and Steven C. Gonzalez for Defendant and Respondent W. R. Grace & Co.-Conn.

Prindle Decker & Amaro, Andy J. Goetz, Kristen Dunn and Kenneth B. Prindle for Defendants and Respondents Chemtronics, Inc., and Spectrum Chemical Manufacturing Corporation.

Sedgwick, Detert, Moran & Arnold, Rebecca R. Weinreich, Kirk C. Jenkins and Thomas B. McNutt for Defendant and Respondent Sanford Corporation.

Sedgwick, Detert, Moran & Arnold and Lily Chow for Defendant and Respondent Gallade Chemical, Inc.

Stall, Astor & Goldstein and Donald W. Goldstein for Defendant and Respondent Radiator Specialty Company.

Steptoe & Johnson, Laurence F. Janssen, Kevin C. Mayer, Richard K. Willard and Brian J. Leske for Defendants and Respondents Shell Oil Company, Fisher Scientific Company, Fisher Scientific International, the Dexter Corporation, Hercules, Incorporated, Miller-Stephenson Chemical Company and H. B. Fuller Company.

Thelen, Reid & Priest, Curtis A. Cole, Mark S. Geraghty and Matthew S. Levinson for Defendants and Respondents American Cyanamid Company, J. T. Baker, Inc., Ciba-Geigy Corporation, Cytec Industries, Inc., and Mallinckrodt Chemical, Inc.

## OPINION

**MOSK, Acting C. J.**—We granted review to decide how a complaint alleging harmful long-term exposure to multiple toxins must plead causation.

Plaintiff, now deceased, contracted multiple myeloma, a form of cancer, while working at Hughes Aircraft Company from January 1973 to March 1994. His suit named at least 55 defendants, including the manufacturers of common products such as WD-40 and rubber cement, and he alleged that the disease arose through his exposure to harmful substances in their products. His second amended complaint, at issue here, contained causes of action for negligence, strict liability for failure to warn and for design defect, ultrahazardous activity, fraudulent concealment, breach of warranty, and battery.

In his complaint, which is long, rambling, and detailed, plaintiff alleged that he believed he and his immediate coworkers used "most, and perhaps all, of the . . . products." Through his and his immediate coworkers' use, he believed he inhaled and had direct skin contact with "most and perhaps all" of them. As for the others, plaintiff alleged he believed that because "all" of the products were used or improperly stored somewhere at the Hughes plant and circulated by its ventilation system, the environment contained "all" of them, and he inhaled or had skin contact with "all" of them. He further alleged that "the foregoing chemicals and chemical ingredients . . . [produce] carcinogenic effects."

Plaintiff continued: "Upon reaching the internal organs of Plaintiff's body, including but not limited to the liver and spleen, the foregoing chemicals and chemical products were transformed by metabolic processes, resulting in the formation of toxic metabolites, free radicals, and residual unmetabolized product, by various complex biological mechanisms . . . . [¶] . . . Upon being so metabolized, residual unreacted product, toxic metabolites, free radicals and other chemicals resulting from metabolic processes migrated to the bone marrow, where such products, byproducts, and toxic metabolites caused hemotoxic, hematotoxic, immunotoxic, genotoxic and carcinogenic injuries to the blood and blood forming organs within Plaintiff's bones, thereby initiating and/or promoting the development of Plaintiff's multiple myeloma and other related and consequential injuries, which will be further established and clarified according to proof at the time of trial."

In discussing the first amended complaint, which was also prolix, the trial court stated: "This complaint is extremely vague, very broad and very global. You have to be very specific as to each defendant and as to each chemical and causation issue. It is not here. It is a global claim. Everybody is responsible for your client's medical problem, but we don't know which defendant and we don't know which chemical it is. We have no idea in terms of causation." The trial court rejected plaintiff's argument that "[w]e have alleged [that] every one of these defendants and every one of these defendants' products caused the disease. That is all we have to do on demurrer. We don't have to prove the case in the demurrer hearing. The case law is quite clear . . . that causation may be generally pled[,] meaning [that] to adequately plead a cause of action the element of causation simply needs to state that the defendants caused the injury."

Certain defendants demurred to the second amended complaint, and the court renewed its criticism, decided that plaintiff had stated as strong a case as he could, and sustained the demurrers of two defendants without leave to amend. It took the others' demurrers off calendar, ruling that they were moot following its order. Later it entered judgment in all defendants' favor. The Court of Appeal affirmed.

## DISCUSSION

In the ordinary personal injury lawsuit, in which the complaint's factual recitations show plainly the connection between cause and effect, it suffices to plead causation succinctly and generally. (*Rannard* v. *Lockheed Aircraft Corp.* (1945) 26 Cal.2d 149, 155-156 [157 P.2d 1]; *Dunn* v. *Dufficy* (1924) 194 Cal. 383, 386-387 [228 P. 1029]; see *Guilliams* v. *Hollywood Hospital* (1941) 18 Cal.2d 97, 103 [114 P.2d 1].) The pleading requirements in such a case are unlike those of certain suits in which pleading with particularity is required, such as suits claiming fraud (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660]) or, as a rule, asserting statutory causes of action (*Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795 [221 Cal.Rptr. 840, 710 P.2d 907]).

But when, by contrast, " 'the pleaded facts of negligence and injury do not naturally give rise to an inference of causation[,] the plaintiff must plead specific facts affording an inference the one caused the others.' " (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 900-901 [2 Cal.Rptr.2d 79, 820 P.2d 181].) That is, the plaintiff must allege facts, albeit as succinctly as possible, explaining how the conduct caused or contributed to the injury. (*Ibid.*; *Dunn* v. *Dufficy, supra,* 194 Cal. at p. 386; see also *Tucker* v. *Cooper*

(1916) 172 Cal. 663, 668 [158 P. 181] [permitting a plaintiff to "allege[] in sequence a series of facts and circumstances which . . . establish the causation between the . . . act of the defendant . . . and the injury"].) (We explain how to satisfy *Christensen*'s pleading requirement in a case of the type before us by listing the relevant criteria *post*, p. 80.)

Defendants may be understood to contend that plaintiff has failed to satisfy *Christensen*'s requirement.

■ In *Rutherford* v. *Owens-Illinois, Inc.* (1997) 16 Cal.4th 953 [67 Cal.Rptr.2d 16, 941 P.2d 1203] (*Rutherford*), we addressed the question of *proof* of causation in "the context of products liability actions." (*Id.* at p. 968.) We explained: "[T]he plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury." (*Ibid.*) In cases like the one before us, presenting complicated and possibly esoteric medical causation issues, the standard of proof ordinarily required is " 'a reasonable medical probability based upon competent expert testimony that the defendant's conduct contributed to [the] plaintiff's injury.' " (*Id.* at p. 976, fn. 11; cf. *id.* at p. 977 [setting forth the standard of proof for asbestos-related cancer claims].)

"The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." (*Rutherford, supra*, 16 Cal.4th at p. 978.) Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" (*id.* at p. 969), but a very minor force that does cause harm is a substantial factor (*ibid.*). This rule honors the principle of comparative fault. (*Ibid.*)

■ Though we regard the complaint as poorly drafted, and it appears to be internally inconsistent in places,[1] we understand plaintiff to be attempting to allege that defendants' products cause cancer, he was exposed to them, and they migrated to his internal organs and caused his multiple myeloma. In sum, each defendant manufactured a chemical product that, as used or foreseeably misused, caused injury.

In light of *Rutherford, supra*, 16 Cal.4th 953, the foregoing allegations were insufficient. But that is understandable, given that the parties disputed

[1] For example, plaintiff identifies as harmful fiber-reinforced resins, "including resins reinforced by carbon, graphite, [K]evlar, glass, and asbestos fibers." But the complaint only alleges that asbestos fibers are carcinogens. Another example involves chemical elements: indium and bismuth are listed as dangerous, but are not alleged to be carcinogens. And he alleges at one point that some of the products were volatile, but elsewhere that all were.

the complaint's sufficiency more than a year before we filed *Rutherford*. We will remand the cause to give plaintiff an opportunity to allege, if he can properly do so (see *post*, pp. 81-82), that each defendant's product was a substantial factor, as that term is defined in *Rutherford*, in causing his multiple myeloma. Specifically:

(1) Plaintiff must allege that he was exposed to each of the toxic materials claimed to have caused a specific illness. An allegation that he was exposed to "most and perhaps all" of the substances listed is inadequate.[2]

(2) He must identify each product that allegedly caused the injury. It is insufficient to allege that the toxins in defendants' products caused it.

(3) He must allege that as a result of the exposure, the toxins entered his body.

(4) He must allege that he suffers from a specific illness, and that each toxin that entered his body was a substantial factor in bringing about, prolonging, or aggravating that illness.

(5) Finally, except in a case (unlike this one) governed by the principle of liability based on market share for a uniform product that we outlined in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 612 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061], he must allege that each toxin he absorbed was manufactured or supplied by a named defendant.

In conformity with the rule that a complaint in a personal injury case is a "statement of the facts constituting the cause of action[] in ordinary and concise language" (Code Civ. Proc., § 425.10), plaintiffs may, and should, allege the foregoing facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited. (See *Rannard* v. *Lockheed Aircraft Corp.*, *supra*, 26 Cal.2d 149, 156-157; *Guilliams* v. *Hollywood Hospital*, *supra*, 18 Cal.2d 97, 101-102 [both speaking of claims of negligence causing personal injury].)

Plaintiffs who know more should, of course, allege additional facts that are important in apprising the defendant of the basis for the claim. The complaint quoted in *Haun* v. *Tally* (1919) 40 Cal.App. 585 [181 P. 81], is an

---

[2]In this case, plaintiff eventually did allege that he was exposed to all of the products. His intervening partitive references were confusing distractions.

example. In *Haun* the plaintiff alleged personal injury because a negligently installed overhead fan fell on him. He alleged the additional fact that a form of pressure caused the fan to dislodge. (*Id.* at pp. 586-587.) But he "did not attempt to particularize what the defects in the fan were" (*id.* at p. 588) that permitted the pressure to separate it from its motor. Again, plaintiffs should allege any additional facts succinctly.

If plaintiffs do not have a sufficient basis to allege that a particular internalized injury-causing toxin was manufactured or supplied by a specific person or entity, their complaints must name Doe defendants (Code Civ. Proc., § 474), availing them of that statute's protection against the statute of limitations (*General Motors Corp.* v. *Superior Court* (1996) 48 Cal.App.4th 580, 589, 593-596 [55 Cal.Rptr.2d 871]) until they can identify the defendants and name them by their true names.

Defendants stated at oral argument that they would not complain about a pleading that succinctly alleged causation, but they contend that plaintiff, having opted to allege specific facts regarding causation at great length and in great detail, is now bound by those allegations in all their intricacy, that the allegations are insufficient, and that he cannot amend his complaint further. We did not grant review to address that contention, and we leave it for the trial court on remand.

Defendants' concerns also bear on the perceived dubiousness of a lawsuit against so many suppliers of products to Hughes Aircraft. Defendant Chem-Trend, Inc., offers a disparaging comparison: "Bockrath's complaint is [analogous to] the following hypothetical. [He] alleges because he lives in Los Angeles he develops multiple myeloma through the 5,000 chemicals he breathes every day. He then files suit against every possible source of chemicals that are released to the Los Angeles basin each day, which he alleges caused his disease."

That concern about overbroad litigation is wholly understandable. The law cannot tolerate lawsuits by prospecting plaintiffs who sue multiple defendants on speculation that their products may have caused harm over time through exposure to toxins in them, and who thereafter try to learn through discovery whether their speculation was well-founded. To permit such pleading would offend principles implicit in *Rutherford*, in which, in the course of defining "substantial factor," we warned that "the contribution of the individual cause [must] be more than . . . theoretical." (*Rutherford*, *supra*, 16 Cal.4th at p. 978.)

But as was discussed at oral argument, the law provides a remedy for improperly speculative pleading. Subdivision (b) of Code of Civil Procedure section 128.7 provides that:

"By . . . filing . . . a pleading . . . , an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:

"(1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

"(2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

"(3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

Thus, it is sharp practice to implead defendants in a products liability suit alleging long-term exposure to multiple toxins unless, after a reasonable inquiry, the plaintiff actually believes that evidence has been or is likely to be found raising a reasonable medical probability that each defendant's product was a substantial factor in causing the harm, as the latter term is defined in *Rutherford, supra,* 16 Cal.4th 953. The actual-belief standard requires more than a hunch, a speculative belief, or wishful thinking: it requires a well-founded belief. We measure the truthfinding inquiry's reasonableness under an objective standard, and apply this standard both to attorneys and to their clients. (*Business Guides* v. *Chromatic Comm. Enterprises* (1991) 498 U.S. 533, 548-549 [111 S.Ct. 922, 932, 112 L.Ed.2d 1140] [applying this standard under similar language in Fed. Rules Civ. Proc., former rule 11, 28 U.S.C.].) If the plaintiff does not believe the requisite evidence exists, but does actually believe that it is likely to be discovered later, "after a reasonable opportunity for further investigation or discovery" (Code Civ. Proc., § 128.7, subd. (b)(3)), the complaint must so state (*ibid.*).

If a lawyer is found to have deliberately filed a products liability suit of the type under discussion on a lesser basis, he or she can be sanctioned (Code Civ. Proc., § 128.7, subd. (c)) and is subject to other disciplinary

action (*Pickering* v. *State Bar* (1944) 24 Cal.2d 141 [148 P.2d 1] (*per curiam*); see Bus. & Prof. Code, § 6068, subd. (d)). And the court may "[s]trike out any irrelevant, false, or improper matter inserted in any pleading." (Code Civ. Proc., § 436, subd. (a).) Moreover, the aggrieved defendant can sue for having had a civil proceeding maliciously instituted against it. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50-51 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; see also *Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 677 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

These are the deterrents that state law provides for dishonest, reckless, or negligent pleading practice. A cancer-afflicted plaintiff suing every manufacturer of an airborne substance found in the Los Angeles basin probably would be exposed to sanctions for the suit, even if certain defendants eventually were found to have made a product that was a substantial factor in the onset of the plaintiff's cancer. We presume that plaintiff here was aware of his duty to pursue his suit in good faith, and, in the absence of contrary evidence, that he did so.

Defendant Chem-Trend, Inc., also contends that plaintiff should have sued defendants by fictitious names under Code of Civil Procedure section 474, which permits that procedure when "the plaintiff is ignorant of the name of a defendant . . . ." This contention assumes, however, that plaintiff is ignorant of the identities of those who allegedly caused him to contract multiple myeloma. (See *General Motors Corp.* v. *Superior Court, supra,* 48 Cal.App.4th 580, 593-594.) As we have explained, he told the trial court otherwise (*ante,* pp. 77-78), and his complaint avers otherwise.

 That brings us to the Court of Appeal's conclusion that the demurrer must also be sustained without leave to amend because plaintiff admitted in discovery that he was unable to identify which products had caused his injury. It is true, as the Court of Appeal observed, that a complaint's allegations may be disregarded when they conflict with judicially noticed discovery responses. (*Del E. Webb Corp.* v. *Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824].)

Justice Godoy Perez disagreed with this portion of the Court of Appeal's analysis. She explained, regarding one defendant: "[Plaintiff's] interrogatory responses . . . contended that exposure to benzene in Sanford's rubber cement was a cause of his myeloma. Read in this context, and considering that expert medical and scientific evidence would be required to prove [his] case, his lack of personal knowledge regarding the precise mechanism by which this occurred should not be viewed as an admission that he cannot identify which specific products caused his injuries."

We agree with Justice Godoy Perez's conclusion. Five defendants asked plaintiff, in interrogatories, to provide a "verified, legally sufficient response[]" to this question: "For each . . . product which you contend caused your multiple myeloma, identify the mechanism" by which it occurred. Each interrogatory defined mechanism as "the physical or chemical process [by] which a certain effect is obtained."

To each defendant, plaintiff answered that he did not personally know how its product caused his illness. He also told defendant American Cyanamid Company that he was "unaware of the identities of any persons who have such knowledge," defendant Cytec Industries, Inc., that he had no "training as a physician or toxicologist" and could not explain the etiology of his illness, and defendants Ciba-Geigy Corporation, Mallinckrodt Chemical, Inc., and J. T. Baker, Inc., that the "only information possibly available . . . which would be responsive to this interrogatory would be the medical and scientific research undertaken by [his] attorneys, which information is privileged . . . ." The record shows that he answered other defendants' questions in the same or similar language.

Plaintiff's admissions may be read only to acknowledge that he did not personally know the precise mechanism that caused his cancer and that he did not personally know the identity of those who would know. As his counsel explains in his brief to this court, plaintiff was a physicist, "not a medical toxicologist, and therefore lacked personal knowledge how [defendants'] chemical products caused his cancer." "That [he] lacked [this] personal knowledge . . . in no way constituted an admission that expert medical testimony could not be provided to establish causation at trial." In sum, the answers are irrelevant with regard to the objective mechanisms that allegedly caused his illness, and invoking them against the complaint cannot succeed.

Defendants also rely on *Setliff* v. *E.I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525 [38 Cal.Rptr.2d 763]. *Setliff*, however, is unhelpful to them. In that case, a paint store employee sued 40 makers of paint, glue, strippers, and solvents, for injuring him. Setliff judicially admitted that he could not identify which of the products injured him, and the Court of Appeal concluded that his inability to do so left him unable to allege causation. (*Id.* at pp. 1533-1534.) In this case, as distinguished from *Setliff*, plaintiff did identify the products that allegedly injured him. He only admitted that he could not state the precise mechanism by which they caused his illness.

## DISPOSITION

The judgment of the Court of Appeal is reversed and the cause is remanded to that court with directions to remand the matter to the trial court for further proceedings consistent with this opinion.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Epstein, J.,* concurred.

Appellant's petition for a rehearing was denied October 6, 1999.

---

*Associate Justice of the Court of Appeal, Second District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.