109 Cal.Rptr.2d 129 (2001)
90 Cal.App.4th 130
Lois PAYNE et al., Plaintiffs and Appellants,
v.
NATIONAL COLLECTION SYSTEMS, INC., Defendant and Respondent.
No. B135352.
Court of Appeal, Second District, Division Five.
June 25, 2001.
As Modified June 26, 2001.
Rehearing Granted July 17, 2001.
*131 Quisenberry & Kabateck, Brian S. Kabateck, Los Angeles, and Penny J. Manship; Esner & Chang and Stuart B. Esner, Los Angeles; and Law Offices of Nate G. Kraut and Nate G. Kraut for Plaintiffs and Appellants.
Carlson, Messer & Turner, Jeffery J. Carlson, Santa Monica, Charles R. Messer and Joseph R. Zamora, Santa Monica, for Defendant and Respondent.
Certified for Partial Publication[*]
*130 TURNER, P.J.

I. INTRODUCTION
On August 5, 1998, before the present proposed class action was ever filed, the Los Angeles County District Attorney and the Attorney General, each acting on behalf of the People of the State of California, secured separate judgments against defendants in the present lawsuit, Trans World Airlines, Inc. (TWA) and National Collection Systems, Inc. doing business as National Credit Management (NCM). The separate August 5, 1998, judgments imposed injunctive and monetary relief and in part were based upon the provisions of Business and Professions Code sections 17200 through 17209, which are commonly called the unfair competition law. (See Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 558, fn. 2, 71 Cal.Rptr.2d 731, 950 P.2d 1086; ABC Internal Traders, Inc. v. Matsushita Electric Corp. (1997) 14 Cal.4th 1247, 1252, 61 Cal.Rptr.2d 112, 931 P.2d 290.) As a result of the separate judgment secured by the Attorney General, 63 persons who were aggrieved by the alleged misconduct of defendants were ordered to receive restitution from NCM. None of the individuals who received restitution from NCM as a result of the August 5, 1998, separate judgment secured by the Attorney General are plaintiffs in the present class action.
In the present class action lawsuit, all 23 plaintiffs sought relief under the unfair competition law in the fourth cause of action of the second amended complaint. The trial court sustained the demurrer to the fourth cause of action of the second amended complaint for relief under Business and Professions Code section 17200 et seq. on res judicata grounds. Based on res judicata principles, the trial court reasoned plaintiffs were barred in the present class action from securing any relief because of the prior August 5, 1998, judgments imposed in the unfair competition law litigation pursued by the Attorney General and the Office of the Los Angeles County District Attorney on behalf of the People of the State of California. As will be discussed in the published portion of this opinion, based upon the provisions of sections 41 and 42 of the Restatement Second of Judgments, we conclude the trial court properly sustained the demurrer *132 to the fourth cause of action. However, as will be noted, due to the unusual circumstances present in this case, we believe leave to amend should have been granted.

II. THE SECOND AMENDED COMPLAINT

A. Overview
Twenty-three plaintiffs in a class action, commenced November 5, 1998, appeal from the demurrer dismissal of their second amended complaint against defendants, TWA and NCM for: violation of Education Code sections 94831, 94832, and 94838; violation of Business and Professions Code section 17500; violation of the Consumers Legal Remedies Act (Civ.Code, § 1750); unfair competition within the meaning Business and Professions Code section 17200; conspiracy to defraud; and fiduciary duty breach. We affirm in part and reverse in part.[1]
The second amended complaint alleged TWA and NCM entered into a conspiracy to defraud low income job applicants out of approximately $2,800 each for a sales training course. The training course was offered by TWA and defendants jointly profited from the scheme in the sum of $7.5 million. Further, on July 8, 1996, the Attorney General and the Los Angeles County District Attorney filed a complaint against TWA and NCM which sought injunctive relief and civil penalties. On August 5, 1998, stipulated separate final judgments in the lawsuit filed by the Attorney General and the Los Angeles County District Attorney were entered against TWA and NCM preventing them from engaging in unlawful and fraudulent practices such as were involved in the present case. Restitution was ordered paid to certain individuals. None of the persons ordered to receive restitution in the two August 5, 1998, judgments are plaintiffs in the present lawsuit. The second amended complaint in the present action alleges that TWA continued to deduct monies from plaintiffs' paychecks in order to pay for the improper courses despite the existence of the injunction.

B. Conspiracy Allegations
The second amended complaint contains substantial conspiracy allegations. As noted earlier, the second amended complaint alleged that the proposed class action lawsuit was brought by persons who were "victims of [TWA's] and [NCM's] conspiracy to defraud low income job applicants out of a fee of approximately $2,800 each for a sales reservation `training' course offered by TWA." It is alleged TWA and NCM conspired as to each of the transactions identified in the second amended complaint. It is further alleged that TWA and NCM "formed a conspiracy to operate the TWA Course" between 1990 and 1998 by use of "unlawful advertisements, false representations, active concealment of statutorily mandated credit terms and threats of collection...." The second amended complaint alleged that defendants "conspired to effect this scheme together." The second amended complaint also alleged, "NCM acted as TWA's collection agency and aggressively pursued payment for the TWA Course despite its knowledge of the concealment *133 from Plaintiffs of the credit terms mandated by statute and other illegal activity...." The second amended complaint alleged that: defendants directed their "scheme, in large part, at poor working mothers and women who were in need of stable employment with medical benefits"; they "intentionally conspired to take advantage of persons who [were] economically vulnerable"; and both TWA and NCM were located in St. Louis, Missouri. At another point, the second amended complaint alleged, "Defendants have engaged in a conspiracy, common enterprise, and common course of conduct the purpose of which was to commit the acts of unfair competition and defraud [plaintiffs], as alleged in this [second amended] complaint, for financial gain." It is also alleged that NCM was fully aware of the conduct of TWA.

C. Substantive Allegations
In terms of the substantive allegations, the second amended complaint alleged that beginning in 1990 and continuing through "some time in 1998, TWA operated purported `vocational schools....'" From 1990 through 1998, TWA placed `"help wanted' advertisements in various publications" which were untrue and misleading. This was because TWA was unable to offer any immediate employment. Rather, the advertisements were designed to induce principally economically disadvantaged single mothers and low income women to accept enrollment in the "TWA Course" in exchange for a potential job with medical benefits. TWA obtained authorization to provide the course from the California Department of Education, Private Postsecondary Division, and its successor the Council for Private Postsecondary and Vocational Education. TWA employees knew that Education Code section 94831 prevented them from advertising in the "`help wanted'" sections of newspapers or magazines. TWA concealed from state authorities the fact it was placing the advertisements in the "`help wanted'" sections of newspapers and magazines.
Those who responded to the advertisements were falsely told that if they completed the TWA Course, they would be guaranteed a job upon completion of the period of instruction. In fact, TWA had sole discretion as to which applicants completed the TWA Course. Before being hired, it was necessary that the student pay dues and join a union, facts which were not disclosed to plaintiffs prior to their enrollment in the TWA Course. TWA also falsely represented that its course would allow plaintiffs to secure employment "throughout the travel industry." In fact, the TWA reservation system was one that was not used by the majority of the travel industry and other airlines. The training provided by TWA was of limited value unless the student obtained employment with that airline.
The TWA Course was not taught in a professional manner. Classes were unruly and disorganized and educational materials were rarely used. Many of the "teachers" were not accredited in compliance with California law. Each plaintiff was required to pay $2,800 for the TWA Course. If a plaintiff could not afford the entire cost of the TWA Course, he or she was required to make a down payment. The second amended complaint alleged, "TWA represented that Plaintiffs could pay the remaining balance for the TWA Course fee through interest free payroll deductions if they were employed by TWA upon completion of the course."
TWA decided which students successfully completed its course. When the course was completed, the successful applicants were offered "`On The Job Training'" and were told that they could be terminated *134 for any reason. Plaintiffs were paid $811 per month but there was a deduction by TWA for between $50 and 100 per month for the course. The location where plaintiffs worked was so unsafe that it was necessary that they park in the TWA parking facility which charged approximately $18 per month. After the deductions for the monies charged for the TWA Course and the parking as well as union dues, plaintiffs received less than the minimum wage. Further, plaintiffs were not advised that if they left their employment, they would be charged an annual interest rate of 18 percent or more on the outstanding balance owed for the TWA Course.
The second amended complaint alleged: "TWA intentionally structured the TWA Course in the manner described ... in order to use the TWA Course as a profit center. TWA intentionally made the TWA Course more difficult than necessary so that there was a low passage rate and TWA could collect money from many students without having to hire all the applicants solicited through `help wanted' ads." Further, the second amended complaint alleged: "Beginning at a time ... at least since 1990, and continuing through 1998, TWA has contracted with, and/or assigned or sold Plaintiffs' contracts for the TWA Course to [ ] NCM for purpose of having NCM collect the amounts owed for the TWA Course from Plaintiffs.... [¶] NCM engaged in this conduct, and conspired with TWA, in order to gain unlawful financial profits at the expense of Plaintiffs." It is further alleged that NCM staff knew of the illegality of both its conduct and that of TWA.
The second amended complaint alleged in the first cause of action the foregoing conduct violated Education Code sections 94831 and 94832 in that "`help wanted'" columns were used to solicit students and false promises of employment were made by TWA. Specifically, the second amended complaint alleged defendants' deceptive conduct consisted of: falsely utilizing the "help wanted" sections of newspapers and the like in order to induce plaintiffs to enroll in the TWA Course; promising applicants employment if they passed the TWA Course when in fact it was solely in the airline's discretion as to whether a job would be offered; falsely representing the marketability of skills taught by the TWA Course; and making misleadingly incomplete statements concerning the terms of the credit extended to applicants including failing to disclose interest payments and an accelerated payment scheme. Further, plaintiffs alleged that the conspiracy to deprive them of monies violated Education Code section 94838, subdivision (c). This is because TWA unlawfully failed to provide requisite notice concerning the holder of the assignment of the contracts for the purchase of the TWA Course for collection which did not contain the notice required by Education Code section 94838, subdivision (c). Additionally, defendants' fraudulent conduct allegedly violated Business and Professions Code section 17500 et seq. and the Consumers Legal Remedies Act pursuant to Civil Code section 1750 et seq. Moreover, the conduct is alleged to violate the provisions of Business and Professions Code section 17200 et seq. and constitute a fraudulent conspiracy as well as a breach of fiduciary duties owed to plaintiffs. As noted previously, the present lawsuit was commenced on November 5,1998.

III. DISCUSSION

A. Standard Of Review
Our Supreme Court has set forth the standard of review for ruling on a demurrer dismissal as follows: "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to *135 amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed `if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317; accord, Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125, 271 Cal.Rptr. 146, 793 P.2d 479; Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal. Rptr. 718, 703 P.2d 58.)

B. The Res Judicata Issue and the Fourth Cause of Action for Violation of the Unfair Competition Law
On July 8, 1996, the Los Angeles County District Attorney and the Attorney General filed suit and later, on August 5, 1998, successfully secured injunctions against both TWA and NCM in separate judgments. Both TWA and NCM were enjoined pursuant to Business and Professions Code sections 17200 et seq. and 17500 et seq. as well as Education Code section 94952, subdivision (c)(1) from continuing with the course of conduct alleged in the second amended complaint. Further, NCM was ordered to pay $15,057.27 to the Attorney General to be placed in a "Restitution Account" which was to be paid to 63 persons specified on pages 11 and 12 of the August 5, 1998, judgment. No plaintiff in the present action is listed on pages 11 or 12 of the August 5, 1998, NCM judgment secured by the Attorney General. In other words, based on the documents available to us and to the trial court, no plaintiff in the present lawsuit received any money as a result of the litigation brought by the Attorney General and the Los Angeles County District Attorney which resulted in the separate August 5, 1998, judgments against TWA and NCM.
We confront the res judicata issue based on the two stipulated August 5, 1998, judgments against TWA and NCM which indicate that none of the plaintiffs in the present action received any restitution or other monetary relief. There can be circumstances where a represented party's claims may be barred by res judicata principles resulting from a judgment in a prior representative lawsuit. Those circumstances are discussed in section 41 of the Restatement Second of Judgments which states in pertinent part: "(1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is: [¶] ... [¶] (d) An official or agency invested by law with authority to represent the person's interests; or [¶] (e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member. [¶] (2) A person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process. [¶] Exceptions to this general rule are stated in [section] 42."
*136 We agree with NCM that the prior lawsuit which resulted in the separate August 5, 1998, judgments was a representative action. An action under the unfair competition law can be a representative action. (See Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 167, 96 Cal.Rptr.2d 518, 999 P.2d 706; Weil, Cal. Practice Guide, Civil Procedure Before Trial (2000), § 14:6.1, p. 14-2.) A representative action can be brought by the Attorney General, a district attorney, or a private person. (Bus. & Prof.Code, § 17204; Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra, 17 Cal.4th at pp. 558, 567-578, 71 Cal.Rptr.2d 731, 950 P.2d 1086.) Section 41 of the Restatement Second of Judgments would appear to bar the present unfair competition law cause of action. A judgment secured on behalf of the People of the State of California falls within the ambit of section 41 of the Restatement Second of Judgments.
However, as noted in the last sentence of section 41 of the Restatement Second of Judgments, there are exceptions to the res judicata rule applicable to prior representative actions. The set of exceptions to the rule that a plaintiff may be barred by a prior judgment in a representative action from pursuing a new lawsuit are set forth in section 42 of the Restatement Second of Judgments which states in relevant part: "(1) A person is not bound by a judgment for or against a party who purports to represent him if: [¶] (a) Notice concerning the representation was required to be given to the represented person, or others who might act to protect his interest, and there was no substantial compliance with the requirement; or [¶] (b) The subject matter of the action was not within the interests of the represented person that the party is responsible for protecting; or [¶] (c) Before rendition of the judgment the party was divested of representative authority with respect to the matters as to which the judgment is subsequently invoked; or [¶] (d) With respect to the representative of a class, there was such a substantial divergence of interest between him and the members of the class, or a group within the class, that he could not fairly represent them with respect to the matters as to which the judgment is subsequently invoked; or [¶] (e) The representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent." The exceptions in section 42 of the Restatement Second of Judgments include: the failure to give notice of the representation; before rendition of the judgment, the representative was divested of authority to act on behalf of the plaintiff; there was a conflict of interest between the plaintiff in the present action and those in the prior lawsuit; and the representative, in this case the Attorney General or the District Attorney, failed to prosecute the prior action with due diligence and reasonable prudence. (E.g., Phillips Petroleum Co. v. Shutts (1985) 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628; St. Sava Mission Corp. v. Serbian Eastern Orthodox Diocese (1990) 223 Cal.App.3d 1354, 1376, 273 Cal.Rptr. 340.)
This issue is before us at the demurrer stage. The question raised is whether an unlawful practice act complaint where there has been a previous judgment entered in a representative action brought by the Attorney General or a district attorney must allege the exceptions set forth in section 42 of the Restatement Second of Judgments. We conclude that when a prior judgment in an unlawful practices action has been secured by the Attorney General or a district attorney, such as occurred in this case, the plaintiff must *137 allege the existence of one of the exceptions in section 42 of the Restatement Second of Judgments. It is presumed that an official duty has been regularly performed. (Evid.Code, § 664.) In order to withstand a demurrer, a plaintiff who is alleging that an official duty was not appropriately performed must allege facts to negate the presumption of regularity. (Lavine v. Jessup (1958) 161 Cal.App.2d 59, 67, 326 P.2d 238; Alexander v. Scattergood (1942) 51 Cal.App.2d 127, 131, 124 P.2d 151; Los Angeles Athletic Club v. Long Beach (1932) 128 Cal.App. 427, 431, 17 P.2d 1061.) In this case, if one of the factors set forth in section 42 of the Restatement Second of Judgments is present, then plaintiffs must allege it. The factors set forth in section 42 of the Restatement Second of Judgments include issues related to conflicts of interest, a lack of diligence, and the absence of reasonable prudence by the lawyers filing the initial representative action.
The second amended complaint does not address any of the exceptions in section 42 of the Restatement Second of Judgments. Based on the limited evidentiary record available to us and to the trial court, we cannot determine as a matter of law that no res judicata effect can be accorded the two August 5, 1998, judgments because of the exceptions in section 42 of the Restatement Second of Judgments. (Bockrath v. Aldrich Chemical Co. (1999) 21 Cal.4th 71, 83-84, 86 Cal.Rptr.2d 846, 980 P.2d 398 [judicially noticeable discovery responses insufficient to dispose of causation issue at demurrer stage].) This is in part because the res judicata issue was not raised until the reply to the opposition to TWA's demurrer to the second amended complaint. NCM never raised the issue. The issue had not been raised previously in the demurrers of TWA to the original and first amended complaints. The trial court sustained the demurrers to the fourth cause of action based on res judicata grounds. We agree with plaintiffs they are entitled to an opportunity to amend to allege facts showing that section 41 of the Restatement Second of Judgments is not a bar to their unlawful competition law cause of action. This is particularly true given the fact that the first time NCM was named as a defendant was in the second amended complaint. We conclude the trial court properly sustained the demurrer to the fourth cause of action of the second amended complaint but leave to amend should have been granted.[2]
C.-H.[**]

IV. DISPOSITION
The order sustaining the demurrer of defendant National Collection Systems, Inc., doing business as National Credit Management, to the first, second, and third causes of action is reversed. The order sustaining the demurrer to the fifth and sixth causes of action without leave to amend is affirmed. The demurrer dismissal as to the first through fourth causes of action is reversed. The order sustaining *138 the demurrer to the fourth cause of action for a violation of the unfair competition law is affirmed. That part of the order sustaining the demurrer to the fourth cause of action without leave to amend, is reversed. Upon issuance of the remittitur, the trial court shall grant plaintiffs leave to amend within a period of time determined by it. Plaintiffs shall each recover their costs incurred on appeal from defendant, National Collection Systems, Inc., doing business as National Credit Management.
ARMSTRONG, J., concurs.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.C through III.H of the majority opinion and the entirety of the concurring and dissenting opinion.
[1] TWA has secured the protection of the bankruptcy courts. Prior to filing its bankruptcy petition, TWA filed a brief in this case. Insofar as the analysis in the TWA brief is relevant to the demurrer of NCM, we have considered it. Further, the request to defer further resolution of the present appeal pending the outcome of the bankruptcy proceedings or the filing of a motion for relief of the automatic stay has been denied. The complaint in the present case was filed on November 5, 1998. The demurrer in the present case was sustained more than 18 months ago and further delay is not in order.
[2] We recognize that the res judicata effect of settlements of representative or class actions can implicate legitimate due process concerns. (Ortiz v. Fibreboard Corp. (1999) 527 U.S. 815, 846, 119 S.Ct. 2295, 144 L.Ed.2d 715; Hansberry v. Lee (1940) 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22.) The parties have not briefed any due process issues and we therefore do not address any constitutional issues. Further, there may be additional facts which warrant the conclusion that the application of res judicata principles would lead to an unjust result. (See Consumers Lobby Against Monopolies v. Public Utilities Com. (1979) 25 Cal.3d 891, 902, 160 Cal.Rptr. 124, 603 P. 2d 41, disapproved on another point in Kowis v. Howard (1992) 3 Cal.4th 888, 896, 899, 12 Cal.Rptr.2d 728, 838 P.2d 250; Dunkin v. Boskey (2000) 82 Cal.App.4th 171, 180-181, 98 Cal.Rptr.2d 44.)
[**] See footnote *, ante.