Filed 3/21/14  McCullough v. Ellis CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| GARY MCCULLOUGH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KIM ELLIS,<br><br>    Defendant and Appellant. | D063607<br><br><br>(Super. Ct. No.<br> 37-2010-00072577-CU-PN-EC) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed and remanded with directions.

Kim L. Ellis, in pro. per., for Defendant and Appellant.

Simpson-Moore and Charles E. Moore for Plaintiff and Respondent.

Defendant Kim L. Ellis appeals a judgment finding her liable to plaintiff Garry McCullough in his legal malpractice action against her.  At a bench trial, McCullough argued Ellis was liable for her law partner's failure to timely file a personal injury action against the driver and owner of the car his vehicle struck.  On appeal, Ellis contends: (1) the trial court erred by denying her nonsuit motion and/or entering judgment for

McCullough because he did not present expert opinion testimony on the element of causation; (2) the evidence is insufficient to show any judgment that could have been obtained against the car's driver or owner would have been collectable; (3) the trial court erred by denying Ellis's motion for summary judgment based on McCullough's not stating a cause of action against her; (4) McCullough did not have standing to pursue this action after he filed a bankruptcy petition; (5) the trial court erred by not ruling on Ellis's request to enforce McCullough's release of claims pursuant to his settlement agreement with her law partner; (6) the evidence is insufficient to support the award of $3,300 in lost wages; (7) the trial court abused its discretion by granting McCullough's in limine motion to preclude Ellis from accusing him of bankruptcy fraud; and (8) the trial court erred by admitting certain e-mails her law partner sent to McCullough. Because we conclude McCullough did not present any expert opinion testimony on the element of causation, testimony required in the circumstances of this case, he did not set forth a prima facie case and the judgment against Ellis must be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

On Friday, August 17, 2007, while McCullough was driving home from work, his truck struck another vehicle that had made an abrupt u-turn. He returned to work the following Monday. On Thursday, August 23, McCullough saw Diane Brooks, a nurse practitioner at Dr. Ehlers's office, for pain he was suffering. He believes she told him to obtain physical therapy or see a chiropractor, put ice on the affected areas, and take medication.

2

On or about September 29, 2007, McCullough retained the law firm of Demanski & Ellis PLC (Firm) to represent him in seeking compensation for injuries he allegedly suffered in the August 17, 2007, accident. David Demanski of the Firm apparently was in charge of the matter.

On October 8, 2007, when his pain had not resolved, McCullough saw his chiropractor, Dr. Rhodes, whom he had previously seen for back pain from December 2006 through June 2007. He obtained treatment from Dr. Rhodes from October 8, 2007, through September 29, 2008.

After the Firm apparently did not file a personal injury complaint before the applicable statute of limitations expired, McCullough filed a legal malpractice complaint against Demanski, the Firm, and "Doe" defendants. He subsequently amended the complaint to add Ellis as a discovered Doe defendant. The trial court denied Ellis's motion for summary judgment.

At a bench trial, McCullough presented his own testimony and the testimonies of his wife and son and Dr. Rhodes. McCullough testified regarding the neck and back pain he suffered after the August 17, 2007, accident and stated he was certain that pain was caused by the accident. He testified he had previously been injured in a 2006 car accident and was diagnosed with a bulging disc in his neck and back, but his complaints arising from that prior accident had resolved before the August 17, 2007, accident. He further testified that he suffered from various other medical problems, including congestive heart failure, diabetes and gout, and has had three or four surgeries.

3

Dr. Rhodes testified regarding McCullough's multiple medical problems, including two shoulder surgeries, knee surgery, angioplasty, a pacemaker, heart disease, diabetes, and gout. Dr. Rhodes testified it was "possible" that the August 17, 2007, accident could have caused McCullough's neck and back pain, but she could not state the accident was the probable cause of that pain. Ellis then moved for a nonsuit, arguing McCullough had not made a prima facie case on the element of causation. The trial court tentatively denied that motion, stating McCullough still could call other witnesses and, when his case-in-chief was complete, she could move for a nonsuit. Dr. Rhodes testified she could not ascertain the cause of McCullough's symptoms for which she treated him from October 8, 2007, through September 29, 2008.

After trial, the parties submitted additional briefing on the element of causation. Ellis argued McCullough had not made a prima facie case because he did not present any expert opinion testimony showing, within a reasonable medical probability, his neck and back pain were caused by the August 17, 2007, accident. She argued she was entitled to a nonsuit as a matter of law. In contrast, McCullough argued that lay opinion testimony in the circumstances of this case was sufficient to prove causation. After considering the evidence presented at trial and reviewing the parties' briefs on causation, the trial court entered judgment for McCullough in the amount of $3,300 for past lost earnings and

4

$25,000 for general damages, for a total award of $28,300 in damages.  Ellis timely filed a notice of appeal.[1]

DISCUSSION

I

*Legal Malpractice Actions and Causation Generally*

"The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200.)  "An attorney's liability [for professional negligence], ' "as in other negligence cases, is for all damages directly and proximately caused by his negligence." ' [Citations.]  It is only where the alleged malpractice consists of mishandling a client's claim that the plaintiff must show proper prosecution of the matter would have resulted in a favorable judgment and collection thereof."  (*DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499, 1507.)

"In conducting the 'trial-within-a-trial' of a legal malpractice case, 'the goal is to decide what the result of the underlying proceeding or matter *should have been*, an

---

1    On October 1, 2013, McCullough filed a motion to augment the record on appeal with a joint trial exhibit list and declaration of James E. King, which apparently were inadvertently omitted from the record on appeal.  Ellis has not opposed his motion.  We grant the motion to augment and consider the documents attached thereto to be part of the record on appeal.

5

objective standard.' " (*Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 585-586.) "In the legal malpractice context, the elements of causation and damage are particularly closely linked. It is difficult to consider a plaintiff's claim that the defendant attorney's proper handling of an underlying matter would have resulted in a favorable judgment that could be collected, without evaluating the amount of such a favorable judgment. The plaintiff has to show both that the loss of a valid claim was proximately caused by defendant attorney's negligence, and that such a loss was measurable in damages." (*Id*. at p. 591.) "[W]hen the attorney's negligence lies in his failure to press a meritorious claim, the measure of damages is the value of the claim lost. [Citation.] . . . '[A]n attorney's "liability, as in other negligence cases, is for all damages directly and proximately caused by his negligence." ' " (*Smith v. Lewis* (1975) 13 Cal.3d 349, 361-362.)

The "case-within-a-case" method applies only in certain legal malpractice actions. (*California State Auto. Assn. Inter-Ins. Bureau v. Parichan, Renberg, Crossman & Harvey* (2000) 84 Cal.App.4th 702, 710.) "[W]hen the malpractice involves negligence in the prosecution or defense of a legal claim, the case-within-a-case method is appropriately employed. [Citation.] Thus, when a client seeks to recover damages for his attorney's negligence in the prosecution or defense of the client's claim, the client must prove that 'but for that negligence a better result could have been obtained in the underlying action. [Citation.] "An attorney malpractice action then, involves a suit within a suit, a reconsideration of the previous legal claim, and only by determining whether or not the original claim was good can proximate damages be determined."

6

[Citation.] This trial within a trial avoids the specter that the damages claimed by a plaintiff are a matter of pure speculation and conjecture.' " (*Ibid*.)

Where the underlying case in a legal malpractice action is an action for negligence (e.g., for personal injury damages), the plaintiff must prove that with proper legal representation he or she would have obtained a favorable judgment in that action and the judgment would have been collectable. In general, to recover personal injury damages based on a negligence theory, a plaintiff must prove duty, breach of that duty, causation, and damages. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 480.) To prove the element of causation, a plaintiff generally must show by a preponderance of the evidence that the defendant's breach of duty (e.g., his or her negligent conduct) was a substantial factor in bringing about the plaintiff's harm. (*Leslie G.*, at p. 481.) If there is insufficient evidence to support a finding that the defendant's negligence was the legal or proximate cause of the plaintiff's injuries, a judgment for the plaintiff cannot be affirmed. (Cf. *Leslie G.*, at p. 481.)

In general, the question "[w]hether a defendant's conduct actually caused an injury is a question of fact [citation] that is ordinarily for the [trier of fact] [citation]." (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252.) In certain cases in which "the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." (*Stephen v. Ford Motor Co.* (2005) 134 Cal.App.4th 1363, 1373.) For example, in cases involving complicated medical causation issues, the standard of proof generally required is a reasonable medical probability based on

7

competent expert testimony that the defendant's conduct contributed to the plaintiff's injury. (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 976, fn. 11.)

"The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical 'probability' and a medical 'possibility' needs little discussion. There can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the [trier of fact]." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402-403.) "Thus, proffering an expert opinion that there is some theoretical possibility the negligent act *could have been* a cause-in-fact of a particular injury is insufficient to establish causation. [Citations.] Instead, the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the [trier of fact], that it is *more probable than not* the negligent act was a cause-in-fact of the plaintiff's injury." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118.) Therefore, in those cases in which the issue of causation is beyond common lay experience, "causation must be founded upon expert testimony and cannot be inferred from the [trier of fact's] consideration of the totality of the

circumstances unless those circumstances include the requisite expert testimony on causation." (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1385.)

## II

### *Element of Causation in This Case*

Ellis contends the judgment must be reversed because McCullough did not present any expert opinion testimony on the issue of causation, testimony required in the circumstances of this case. She argues McCullough did not present any expert opinion testimony that the August 17, 2007, accident caused the neck and back pain he allegedly suffered after that date.

### A

Before addressing the substance of Ellis's contention, we first address McCullough's apparent argument that because Ellis admitted the issue of liability before trial, she also necessarily admitted the issue of causation and therefore cannot raise that issue on appeal. To the extent he so argues, we conclude the record on appeal supports the trial court's implicit ruling that Ellis did not, in fact, admit the issue of causation.

On June 15, 2012, the parties filed a joint trial readiness conference report in which the parties agreed the issues of duty and breach of duty were not disputed and the issues of causation and damages were disputed. At the trial readiness conference on that date, Ellis informed the trial court that she was "admitting liability . . . for Mr. Demanski blowing the statute [of limitations]." On July 5, Ellis filed a trial brief arguing that substantial evidence does not support a finding of causation because McCullough had not, to date, offered any expert opinion on causation. At the August 21, 2012, hearing on

9

McCullough's request for an order approving a good faith settlement with Demanski (which the court denied), Ellis stated: "I'm stipulating to liability." When the court inquired whether the trial would be "only a damage phase," Ellis replied, "Correct." At the October 26, 2012, hearing, the parties confirmed they were ready for a bench trial and Ellis confirmed she admitted liability.

On October 29, 2012, the bench trial began and McCullough presented his opening statement. Ellis then argued McCullough had failed to present a prima facie case in his opening statement, stating: "This is not just a damage case, you know, I am giving him duty. I'm giving him breach. But causation, they never mentioned anything about causation in the opening statement." When the court inquired whether she had stipulated to liability, Ellis replied that she had stipulated that Demanski was negligent, but had not stipulated to the element of causation. Ellis argued: "[C]ausation of injury is part of the underlying accident, and that has to be proved." McCullough argued that the trial was to be only on the element of damages. Ellis explained: "[M]y understanding was that I was stipulating to liability for the malpractice. It wasn't my understanding that I was stipulating for liability for the car accident." In light of the apparent confusion regarding what Ellis meant by admitting "liability," the court ruled the bench trial would proceed that day only on the issue of damages and McCullough would receive a short continuance, if needed, to present evidence on causation. The trial then proceeded and McCullough presented evidence regarding his neck and back pain, including his own testimony and the testimonies of his wife, his son, and Dr. Rhodes. After trial, the court

10

permitted the parties to submit, and the parties submitted, additional briefing on the issue of causation. The court then entered judgment for McCullough.

Our review of the record on appeal shows the trial court did not make any finding, either express or implied, that Ellis had admitted causation (i.e., McCullough's injuries were caused by the August 17, 2007, accident). On the contrary, by allowing the parties to present evidence on the issue of causation and submit posttrial briefs on the element of causation, the court implicitly ruled Ellis had not, in fact, admitted causation and therefore that issue was disputed and subject to resolution at trial. On this record, we conclude the trial court did not err by so finding. Therefore, Ellis can challenge on appeal McCullough's evidence on the issue of causation.

B

*Evidence on causation.* At trial, McCullough testified he suffered neck and back pain after the August 17, 2007, accident and stated he was certain that pain was caused by that accident. He stated he "felt great before, horrible after" that accident. He testified his injuries from that accident interfered with his ability to do his job as a construction manager. He testified he had previously been injured in a 2006 car accident and was diagnosed with a bulging disc in his neck and back, but his complaints arising from that prior accident had resolved before the August 17, 2007, accident. He further testified that he suffered from various other medical problems, including congestive heart failure, diabetes and gout, and has had three or four surgeries. He denied that it was possible he was confusing his injuries suffered in the prior 2006 car accident with the injuries he claimed he suffered in the August 17, 2007, accident.

11

Dr. Rhodes testified regarding McCullough's multiple medical problems that included two shoulder surgeries, knee surgery, angioplasty, a pacemaker, heart disease, diabetes, and gout. From December 2006 through June 2007, Dr. Rhodes treated McCullough for back pain he suffered in December 2006 after he twisted while sitting and felt a sharp pain in his lower back. When Dr. Rhodes saw McCullough on October 8, 2007, he told her about a motor vehicle accident and complained of neck and back pain. However, he never told her that he had injured his neck or back in a car accident. Dr. Rhodes testified it was "possible" the August 17, 2007, accident could have caused McCullough's neck and back pain, but she could not state the accident was the probable cause of that pain. Dr. Rhodes testified she could not ascertain the cause of McCullough's symptoms for which she treated him from October 8, 2007, through September 29, 2008. She testified McCullough's pain was caused by pressure on the nerves from muscle spasm or degenerative changes such as osteophytes, which usually occur over a long period of time.

McCullough's son testified that for about two months after the August 17, 2007, accident, his father would stay in his room and would not come downstairs or, if he did, he would sit on the couch. McCullough's wife testified her husband saw Dr. Rhodes for a prior back injury after he twisted his back and could not straighten up. She also testified she and her husband and family took a seven-day trip to Europe in March 2008. Also, she and her husband had been to Disneyland "a lot of times" since the August 17, 2007, accident. However, during those trips McCullough had difficulty walking and sat on a bench a lot.

12

C

Ellis asserts McCullough did not set forth a prima facie case because he did not present any expert opinion testimony on the element of causation. She argues that because there were other possible causes of his neck and back pain, the issue of causation was beyond the common knowledge of the trier of fact and lay opinion on causation was insufficient. She argues, to prove the element of causation, McCullough was required to present expert opinion testimony that, to a degree of reasonable medical probability, his neck and back pain was caused by the August 17, 2007, accident. We agree.

Based on our review of the record on appeal, we conclude there was evidence presented showing there were multiple possible factors other than the August 17, 2007, accident that may have caused McCullough's neck and back pain he allegedly suffered after that date. McCullough suffered neck and back pain following two prior incidents in 2006. He testified he had been previously injured in a 2006 car accident and diagnosed with a bulging disc in his neck and back. Dr. Rhodes and McCullough's wife testified he also suffered back pain after twisting while sitting in December 2006. It is possible McCullough's neck and back pain was caused by those incidents and not by the August 17, 2007, accident. The evidence also shows McCullough has a complex medical history, involving multiple surgeries, diseases, conditions, and medications, some or all of which theoretically could have been factors in causing, or determining the cause of, the pain he felt after August 17, 2007. Because of the multiple possible causes of McCullough's neck and back pain after August 17, 2007, expert opinion testimony was required to prove the element of causation. An expert opinion was required to establish,

13

to a degree of reasonable medical probability, the August 17, 2007, accident was a substantial factor in causing that neck and back pain. (*Bockrath v. Aldrich Chemical Co.*, *supra*, 21 Cal.4th at p. 79; *Rutherford v. Owens-Illinois, Inc.*, *supra*, 16 Cal.4th at p. 976, fn. 11; *Jones v. Ortho Pharmaceutical Corp.*, *supra*, 163 Cal.App.3d at pp. 402-403; *Jennings v. Palomar Pomerado Health Systems, Inc.*, *supra*, 114 Cal.App.4th at p. 1118; *Cottle v. Superior Court*, *supra*, 3 Cal.App.4th at p. 1385.)

Because the complex medical issue of causation of his neck and back pain was beyond common lay knowledge in the circumstances of this case, McCullough was required to present expert opinion testimony on the element of causation. By presenting only lay testimony on causation, he did not satisfy his burden at trial to prove, to a degree of reasonable medical probability, that the August 17, 2007, accident was a cause-in-fact of (i.e., a substantial factor in causing) his neck and back pain. Furthermore, to the extent McCullough argues Dr. Rhodes's testimony was sufficient to meet that burden, Dr. Rhodes did not provide the required expert opinion on causation, but testified only that it was "possible" the August 17, 2007, accident caused the neck and back pain for which McCullough sought treatment. Dr. Rhodes testified she could not ascertain the cause of McCullough's symptoms for which she treated him from October 8, 2007, through September 29, 2008. Because McCullough did not present any expert opinion testimony on the element of causation, he did not set forth a prima facie case in the underlying personal injury case and thus in his legal malpractice action against Ellis. Likewise, absent such evidence on causation, the evidence is insufficient to support the judgment. Accordingly, the judgment must be reversed.

14

III

*Other Contentions*

Because we dispose of this appeal based on the ground discussed above, we need not, and do not, address the merits of Ellis's other contentions.

DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions that it enter a new judgment in favor of Ellis.  Ellis is awarded her costs on appeal.


McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.

15