[No. G046765. Fourth Dist., Div. Three. Mar. 13, 2013.]

GLORIA CHEUNG HENDERSON, Plaintiff and Appellant, v. NEWPORT-MESA UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

480

## COUNSEL

Law Offices of Randall S. Henderson and Randall S. Henderson for Plaintiff and Appellant.

Lynberg & Watkins, Ric C. Ottaiano, Courtney L. Hylton and Patrick J. Kirby for Defendants and Respondents.

OPINION

**RYLAARSDAM, Acting P. J.**—Gloria Cheung Henderson appeals from a judgment of dismissal entered after the trial court sustained a demurrer to her complaint without leave to amend. Henderson, a teacher, sued Newport-Mesa Unified School District and its governing board (the District), alleging claims for damages based on (1) the District's failure to accord her "first priority" when they elected to fill a vacant position in the subject matter she had previously taught, as required by Education Code section 44918 (unless otherwise specified, all further statutory references are to this code), and (2) the District's discrimination against her on the basis of her race, in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

The trial court sustained the District's demurrer to both causes of action on the basis Henderson's claims were barred by res judicata, because she had participated in an administrative proceeding which adjudicated her rights in connection with the District's decision to lay off a large number of teachers at the end of the prior school year, and she later voluntarily dismissed her petition for writ of mandate challenging the adverse result of that proceeding. Additionally, with respect to Henderson's claim for violation of section 44918 specifically, the court concluded the statute did not give rise to a private right of action for damages and that whatever right Henderson had to enforce the statute by way of a writ of mandamus had been rendered moot by her failure to pursue that relief in a timely manner. We reverse the judgment.

Section 44918 imposes a mandatory duty on the District to accord temporary teachers such as Henderson "first priority" in hiring under the specified circumstances, and we can discern no rationale for imposing such a duty other than the desire to provide those temporary teachers with some protection against the risk they will be permanently relegated to "temporary" status, while others with no greater qualifications are hired to fill positions which offer the potential of achieving employment security. Whether the District's alleged failure to fulfill that duty was a proximate cause of the damages Henderson alleges is a matter of proof at trial, but for pleading purposes it is sufficient that she has alleged facts suggesting it was.

The court's determination that both causes of action were barred by res judicata was similarly flawed. The earlier administrative hearing addressed only the District's decision to lay off a large number of certificated employees for economic reasons at the end of the 2009–2010 school year, and resolved claims affecting the order in which that layoff would impact individual employees. With respect to Henderson specifically, it appears the hearing resolved only her contention she had been improperly classified as a "temporary" employee—a classification which effectively guaranteed the layoff

would impact her personally. There is no indication the administrative hearing addressed Henderson's distinct right, as a temporary teacher, to be accorded priority if the District chose to fill a vacant position in the subsequent school year, or her right to be free from discrimination on the basis of her race. Consequently, the court erred in concluding Henderson's current claims were barred by the doctrine of res judicata.

## FACTS

For purposes of analyzing the District's demurrer, we "generally assume that all facts pleaded in the complaint are true." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [6 Cal.Rptr.2d 151].)

According to the complaint, Henderson is a first generation Chinese-American. She holds California teaching credentials qualifying her to teach several subjects. She also holds master's degrees in both English and psychology. In January of 2008, while Henderson was employed as a tenured teacher in another school district, she was offered the opportunity to take over the advanced placement English program at Corona del Mar High School, a school within the District.

Henderson was classified as a "temporary" teacher, but was told it was the District's policy to initially classify all new teachers as temporary, and she could expect to be reclassified as a probationary teacher after a few months. Prior to the end of the 2007–2008 school year, the District notified her she would be rehired for the 2008–2009 school year, but again as a "temporary" teacher.

During the 2008–2009 school year, Henderson was assigned to teach the same advanced placement English classes she had been hired to teach the prior year, plus an advanced placement psychology class. At the end of that school year, Henderson was "released" by the District pursuant to section 44954, but was once again rehired as a temporary teacher for the 2009–2010 school year and assigned to teach the same advanced placement courses she had taught the prior year.

At the end of the 2009–2010 school year, the District again notified Henderson she was being released pursuant to section 44954. But the District also decided to eliminate approximately 125 "full time equivalent" positions from its payroll due to a cut in state spending. Thus, on or about March 5, 2010, the District sent out layoff notices to 242 probationary and permanent certificated teachers, plus related notices to all 71 temporary teachers employed by the District. These related notices offered the temporary teachers

an opportunity to participate in a hearing held pursuant to sections 44949 and 44955, to contest the District's decision.

Henderson was among 173 potentially affected teachers who elected to contest her proposed layoff at the administrative hearing, which took place in April and May of 2010. Of those teachers, Henderson was the only one who employed private counsel to represent her at the hearing. All the other teachers were represented by counsel provided by the union. At the hearing, the District employee who was responsible for supervising the layoff process testified the District was not seeking to actually terminate the employment of any high school teacher who held "probationary status or higher." Henderson, in turn, relied on evidence suggesting she had been improperly classified as a temporary employee when others with lesser qualifications and less seniority had been classified as probationary or permanent.

On May 17, 2010, at the conclusion of the hearing, the administrative law judge (ALJ) ruled in favor of the District on all issues. The ALJ concluded the District had good cause for its decision to terminate each of the 173 employees who elected to contest the layoff decision. The ALJ's decision was approved by the District's governing board on May 19, 2010.

Over the course of the summer of 2010, the District made no offer to reemploy Henderson for the subsequent school year, as it had done in each of the prior two summers. Instead, the District advertised to fill certain positions for which Henderson was both qualified and entitled by law to be given first priority.

Henderson did apply for these available positions, but despite her qualifications and statutory priority, she was neither offered the positions nor asked to submit to an interview for them. Three positions for which Henderson was qualified were instead offered to Caucasian women. In December of 2010, Henderson applied for a part-time position at Estancia High School, another school within the District. After she interviewed with Estancia's principal, he told her she was his top choice for the position, although the final selection would be made by human resources personnel at the district level. Henderson was not offered the position.

As of the 2009–2010 school year, approximately 4.4 percent of the District's students allegedly self-classified as "Asian." In the two years Henderson was employed by the District, however, the percentage of certificated staff who self-classified as Asian was reduced from 3 percent to just 0.5 percent, while the percentages of Asians in Orange County as a whole remained steady.

Henderson claims the District's refusal to rehire her for the 2010–2011 school year was based on both a desire to retaliate against her for the vigorous defense she waged at the administrative hearing and a desire to systematically reduce the number of certificated employees who self-classified as Asian.

In January 2011, Henderson filed a claim against the District pursuant to sections 910 and 945.4 of the Government Code, seeking an award of damages stemming from its wrongful refusal to rehire her. Henderson's claim was denied by the District in February of 2011. In June 2011, Henderson sought and obtained a right-to-sue letter from the Department of Fair Employment and Housing pursuant to Government Code section 12960.

Based on the foregoing facts, Henderson's complaint alleged two causes of action: one for violation of section 44918's requirement she be accorded "first priority" if the District chose to fill any vacant positions teaching the subjects she had previously taught and a second for wrongful discrimination against her on account of her Chinese heritage, in violation of FEHA.

The District demurred to Henderson's complaint, arguing that both of her causes of action were barred by the earlier administrative proceeding, in which the ALJ purportedly found there was "good cause to not reemploy [her]," because Henderson had failed to exhaust her judicial remedy in connection with it. The District also argued Henderson's claim for damages based on the alleged violation of section 44918 failed to state a cause of action because the statute did not give rise to a private right of action for damages and that Henderson's sole remedy was a petition for writ of mandate to compel its compliance with the statute. In support of its demurrer, the District also asked the court to take judicial notice of Henderson's petition for writ of mandate challenging the result of the earlier administrative hearing, filed on June 21, 2010, and of her request for dismissal of that petition, with prejudice, filed on December 28, 2010.

Henderson opposed the demurrer, arguing the District's preclusion argument was based on a misconstruction of both the allegations of her complaint and the scope of the earlier administrative proceeding. She pointed out the complaint alleged only that the administrative proceeding had addressed the propriety of the District's decision to *lay off* a large group of employees at the end of the 2009–2010 school year, and made no reference to whether there were grounds for *not rehiring* her specifically for the 2010–2011 school year.

Henderson explained her participation in the administrative proceeding had been for the limited purpose of challenging her classification as a "temporary" employee, which afforded her the lowest level of job security in the implementation of the District's planned layoffs. Henderson also noted that as long as she remained classified as a temporary employee, the District had absolute discretion to terminate her services without cause, and consequently the existence of "good cause" for terminating her employment was legally irrelevant, and thus could not have been adjudicated in the proceeding. In support of her contention about the limited scope of the administrative hearing, Henderson requested the court take judicial notice of (1) the notices served on her by the District, which reflected she had been "invited . . . to participate in the statutory procedures for certificated layoffs . . . if you desired to challenge your classification as a temporary certificated employee," and (2) the District's resolution adopting the ALJ's decision, in which it specifically resolves that all the temporary teachers were "properly classified," and that all were "released from employment pursuant to section 44954."

Henderson also disputed the District's claim she had no private right of action for damages under section 44918, arguing the statute imposed a mandatory duty specifically designed to protect the employment rights of temporary teachers, and thus recognition of a private right of action in members of that affected group was necessary to further the statutory goal. Alternatively, she claimed that even if the court determined there was no private right of action, the District had expressly conceded that a petition for writ of mandate would be an appropriate remedy, and her cause of action alleged all the necessary facts to warrant such relief.

On October 25, 2011, the date originally scheduled for the demurrer to be heard, the court issued an order soliciting additional briefing on several issues. First, the court asked the parties to assume Henderson's right to preference in rehiring for the 2010–2011 school year had not been addressed in the earlier administrative proceeding, as she claimed, and to explain what obligation, if any, she had to exhaust administrative remedies for *that claim* prior to seeking relief in the court. Second, the court asked the parties to address whether Henderson's eligibility for "first priority" under section 44918 was dependent upon her serving two consecutive years as a temporary teacher *after* she had been released pursuant to section 44954. And third, the court asked the parties to address the extent to which Government Code section 815.6 bears on the analysis of whether Henderson has a private right of action under section 44918.

The parties provided the court with additional briefing, with the District adopting the court's suggestion that Henderson would not qualify for "first

priority" in rehiring under section 44918, because she could not allege she had been retained as a temporary teacher for two full years *after* she was released pursuant to section 44954. The District also offered additional arguments supporting its contention Henderson had no private right of action under section 44918 in any event, and reasserted its claim that Henderson's causes of action were barred by the earlier administrative proceeding, but this time stated in terms of a "primary rights" analysis. Specifically, the District argued the "primary right" at issue in both the administrative proceeding and this lawsuit was Henderson's "alleged right to employment in a position with the District for the 2010–2011 school year."

Henderson disputed each of the District's new points, arguing there was nothing in the language of section 44918 requiring that a temporary teacher's completion of two consecutive years be subsequent to her release pursuant to section 44954, and reasserting her contention the statute gave rise to a private right of action. Henderson also claimed the District had improperly character-ized the purported "primary right" at issue in this case, because her right *to be properly classified* as a teacher was distinct from her right, *as a temporary teacher*, to be accorded statutory priority in rehiring, and both of those rights were distinct from her right to be free from racial and ethnic discrimination.

The court sustained the demurrer without leave to amend. In doing so, the court accepted the District's "primary rights" analysis, and characterized the single primary right at issue in both the administrative proceeding and in the causes of action asserted in this lawsuit as Henderson's alleged right to be "reemployed for the 2010/2011 school year." The court also noted that all of "the facts underlying [Henderson's current] claims were in existence by September of 2010, a full three months prior to the voluntary termination of the underlying proceeding." The court thus concluded the adverse ruling in that administrative proceeding effectively subsumed Henderson's current claims, and barred her from asserting any separate claim based upon the District's failure to reemploy her.

The court also concluded, with respect to Henderson's claim for violation of section 44918, that the statute provided no private right of action for failure to reemploy a temporary teacher: "Section 44918 does not provide for any specific remedy or penalty, and does not actually provide for reemploy-ment; instead, it provides for nothing more than *consideration* amongst other similarly-situated teachers for whatever vacant spots (if any) exist for that particular school year. A private right of action under Gov. Code § 815.6 does not arise since § 44918 is not intended to protect the financial well-being of temporary teachers." Finally, the court reasoned that while a mandamus remedy would be available to enforce the District's compliance with section 44918, such an option had been rendered moot by the time Henderson filed

this lawsuit in August of 2011, since by that date the 2010–2011 school year—the one for which Henderson might have claimed "first priority" to fill a vacant position—had already been completed.

Following its order sustaining the demurrer without leave to amend, the court entered a judgment dismissing Henderson's case.

## DISCUSSION

### 1. *Standard of Review*

We review the court's demurrer rulings de novo (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]), and the rules we apply are well settled: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Significantly, because "[a] demurrer tests the sufficiency of a complaint by raising questions of law," we are "not bound by the trial court's construction of the complaint . . . but must make [our] own independent interpretation." (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800 [107 Cal.Rptr.2d 710].) Thus, "[w]e affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111 [55 Cal.Rptr.3d 621].)

### 2. *Governing Law*

■ The claims asserted by Henderson, both here and in the earlier administrative proceeding, arise against the backdrop of California's " 'complex and somewhat rigid' legislative scheme for classifying public school teachers . . . ." (*McIntyre v. Sonoma Valley Unified School Dist.* (2012) 206 Cal.App.4th 170, 175 [141 Cal.Rptr.3d 540], quoting *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 917 [129

Cal.Rptr.2d 811, 62 P.3d 54].) Within this scheme, teachers are required to be classified as either permanent, probationary, temporary or substitute. (§§ 44915, 44916.) "[A] teacher's job classification 'is important in determining a teacher's rights to reelection [(retention)] and promotion . . . and to determining the level of procedural protections to which a teacher is entitled should he or she be dismissed or nonreelected' for the next school year . . . ." (*McIntyre v. Sonoma Valley Unified School Dist., supra,* 206 Cal.App.4th at p. 174.) "The classification system has precipitated recurring litigation; teachers not infrequently seek the greater degree of position permanency which a higher category affords." (*Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826–827 [114 Cal.Rptr. 589, 523 P.2d 629].)

" 'In the case of permanent and probationary employees, the employer's power to terminate employment is restricted by statute. Substitute and temporary employees, on the other hand, fill the short range needs of a school district and generally may be summarily released. [Citation.]' [Citation.]" (*Vasquez v. Happy Valley Union School Dist.* (2008) 159 Cal.App.4th 969, 974 [72 Cal.Rptr.3d 15].) A school district is not required to provide any reason or offer a hearing if it elects to release or not reelect a temporary teacher; all that is required is the school district's issuance of statutory notice pursuant to section 44954. (*Vasquez v. Happy Valley Union School Dist., supra,* 159 Cal.App.4th at p. 975.)

Section 44954 specifies that school districts may "release" certificated temporary employees "[a]t the pleasure of the board prior to serving during one school year at least 75 percent of the number of days the regular schools of the district are maintained" (§ 44954, subd. (a)), and "[a]fter serving during one school year the number of days set forth in subdivision (a), if the employee is notified before the end of the school year of the district's decision not to reelect the employee for the next succeeding year" (§ 44954, subd. (b)).

But the Education Code narrowly defines the circumstances in which teachers may be classified as temporary, apparently due to a specific concern school districts might exploit that designation to the detriment of the employees, in an attempt to maintain maximum flexibility in hiring teachers from year to year: "The Code recognizes two general kinds of temporary employees: those who are employed to serve for less than three or four months, or in some types of limited, emergency, or temporary assignments or classes (see §§ 44919, 44921, 44986); and those who are employed for up to one year to replace a certificated employee who is on leave or has a lengthy illness (see §§ 44920, 44918)." (*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006) 145 Cal.App.4th 1260, 1281 [52 Cal.Rptr.3d 486], fn. omitted.) "In establishing these narrow categories, the Legislature has sought

to limit the ability of school districts to classify teachers as temporary employees." (*California Teachers Assn. v. Vallejo City Unified School Dist.* (2007) 149 Cal.App.4th 135, 146 [56 Cal.Rptr.3d 712].)

Moreover, as explained in *Haase v. San Diego Community College Dist.* (1980) 113 Cal.App.3d 913, 918 [170 Cal.Rptr. 366], "[t]he Legislature . . . has restricted the flexibility of a school district in the continued use of temporary employees [citations], for otherwise the benefits resulting from employment security for teachers could be subordinated to the administrative needs of a district." In that vein, section 44918 provides temporary teachers some limited rights with respect to reemployment, if they have been retained in that temporary capacity by their districts for nearly a full school year. (*Stockton Teachers Assn. CTA/NEA v. Stockton Unified School Dist.* (2012) 204 Cal.App.4th 446, 461 [139 Cal.Rptr.3d 55] ["Section 44918 gives reemployment rights to certain long-term temporary and substitute employees, i.e., those who have worked at least 75 percent of the school year and have not been released, or those who have been released, but have been hired as a temporary or substitute for two consecutive years."].)

■ Specifically, section 44918 provides that if a temporary employee who has served 75 percent of the school year is hired for a *vacant position* the next year, the year of temporary employment will retroactively qualify as a probationary year. (§ 44918, subd. (a).) Further, section 44918 requires that if a temporary employee who has served at least 75 percent of the school year *has not been* released pursuant to subdivision (b) of section 44954, that employee "*shall be reemployed* for the following school year to fill any vacant positions in the school district . . . ." (§ 44918, subd. (b), italics added.) In light of the latter provision, school districts must routinely "release" any temporary certificated employees who have served at least 75 percent of a school year, in order to maintain maximum flexibility to make hiring decisions for the following school year. (See *McIntyre v. Sonoma Valley Unified School Dist., supra,* 206 Cal.App.4th at pp. 177–178 [reflecting school district's serial releases and rehiring of a temporary teacher over the course of three years].)

And in the provision especially pertinent to this case, section 44918, subdivision (c), provides that if a temporary employee "was released pursuant to subdivision (b) of [s]ection 44954 and has nevertheless been retained as a temporary or substitute employee by the district" for 75 percent of *two consecutive years,* "that employee *shall receive first priority if the district fills a vacant position,* at the grade level at which the employee served during either of the two years, for the subsequent school year. In the case of a departmentalized program, the employee shall have taught in the subject matter in which the vacant position occurs." (§ 44918, subd. (c), italics added.)

Although the trial court suggested, and the District consequently asserted, that the statute's guarantee of "first priority" to a temporary teacher retained for two consecutive years applies only to a temporary teacher who has been retained for two successive years *after* being released pursuant to section 44954, we cannot interpret the statute that way. While we would agree the provision is awkwardly worded—the phrase "was released" is clearly past tense, while the phrase "has nevertheless been retained" is temporally equivocal—the fact is the provision does not explicitly require the two consecutive years of temporary teaching to *follow* the teacher's release pursuant to section 44954.

More important, if such a requirement were inferred, it would produce an anomalous result. Specifically, under that interpretation, the temporary employee who has endured for *two consecutive years* following receipt of a notice pursuant to section 44954 would have less right to fill a vacant position in the subsequent year than would a temporary employee who had served only *a single year* without receiving such a notice. Subdivision (b) of section 44918 requires that the latter be *"reemployed* for the following school year to fill *any vacant positions"* (italics added), while under the District's interpretation, subdivision (c) would guarantee the temporary teacher who had served two consecutive years after receiving such a notice only "first priority *if* the district fills a vacant position" (italics added). Such a result runs counter to the Education Code's near slavish adherence to seniority as a basis for establishing relative job security among teachers, and we reject it.

■ Instead, we conclude the statute simply reflects a modest effort to encourage school districts to integrate temporary teachers whose services have proved satisfactory over an extended period of time into the ranks of the probationary and permanent employees, and thus to curtail any tendency school districts might have to perpetuate a permanent underclass of "temporary" teachers with no prospects of achieving job security. Hence, under the first provision, any temporary employee who has served at least 75 percent of a school year and is then hired for the following year as a probationary employee is entitled to retroactive probationary credit for the year of temporary status. Under the second provision, if a school district fails to exercise its absolute right to release a temporary employee who has served at least 75 percent of the school year in accordance with section 44954, it is required to reemploy that teacher to fill a vacant position rather than another temporary slot.

And under the third provision of section 44918, *which is the one at issue here,* even when a school district has given a notice of release to a temporary teacher, if it has otherwise acknowledged the teacher's satisfactory performance by choosing to retain him or her over the course of two consecutive

school years, *it must give that teacher first priority in the event it elects to fill a vacant position for which that teacher is qualified in the subsequent school year.*

With that statutory background in mind, we turn to the merits of the District's demurrer.

### 3. Private Right of Action Under Section 44918

As we have explained, the allegations of Henderson's complaint demonstrate that by the end of the 2009–2010 school year, she had served more than two complete, consecutive years as a temporary teacher, and thus she qualified for "first priority if the district fills a vacant position, at the grade level at which [she] served [and] in the subject matter in which the vacant position occurs." (§ 44918, subd. (c).)

■ But the District argued, and the trial court agreed, that section 44918 did not give Henderson a private right of action. We disagree. Government Code section 815.6 allows an individual to state a claim for damages against a governmental entity based on its violation of a mandatory statutory duty "that is designed to protect against the risk of a particular kind of injury . . . ." Courts apply a three-pronged test for determining whether liability can be imposed under this statute: "(1) an enactment must impose a mandatory, not discretionary, duty [citation]; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability [citations]; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." (*State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914].)

In its analysis of section 44918, the trial court concluded section 44918 did not state a private right of action for two reasons: First, because the statute "does not provide for any specific remedy or penalty, and does not actually provide for reemployment; instead, it provides for nothing more than *consideration* amongst other similarly-situated teachers for whatever vacant spots (if any) exist for that particular school year . . . ." And second, because "§ 44918 is not intended to protect the financial well-being of temporary teachers."

■ With respect to the first point, we note the court confused the issue of whether the statute imposes a mandatory duty with the issue of whether it specifies a particular remedy. Those are two distinct questions, and the test for determining the existence of a private right of action does not include any requirement that a statute actually specify a remedy.

■ Section 44918, on its face, imposes more than a mere obligation to *consider* Henderson for an available position. The District's mandatory duty

is to give Henderson "first priority" if it chooses to fill a vacant position in the grade level and subject which she taught as a temporary teacher. That mandatory duty implies more than an obligation to consider her for the position on an equal basis with other applicants—if that were all it required, the benefit would be illusory. We presume a district would *consider* anyone who applied.

Instead, our Supreme Court characterized section 44918 as obligating the district to give a temporary employee who fulfills its requirements "a preferential right of reemployment." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 642 [59 Cal.Rptr.2d 671, 927 P.2d 1175] (*California Teachers Assn.*) [including § 44918 among six Ed. Code statutes which it describes as giving "the described classes of persons a preferential right of reemployment"].)

*California Teachers Assn.*, in which the Supreme Court addressed a teacher's claim of preferential employment rights in connection with a vacant coaching position, is instructive in analyzing the effect of such a preferential right—and by extension, whether a school district's violation of the right would support a claim for damages. There, the teacher filed an action seeking injunctive relief and damages against his school district, alleging it violated section 44919, subdivision (b), which specifies that an open coaching position "shall first be made available to teachers presently employed by the district." The teacher argued the school district violated that obligation when it awarded a vacant coaching position for which the teacher had applied to a nonteacher, rather than to him. The trial court ruled against the teacher, however, agreeing with the school district's interpretation of the statute as requiring only that it *notify* its teachers of the available coaching position, without any obligation to accord them any preference *in hiring*. The Court of Appeal then reversed that ruling, agreeing with the teacher's contention that the statute obligated the school district to give a " 'right of first refusal' " (*California Teachers Assn., supra*, 14 Cal.4th at p. 632) to any teacher employed by the school district who applied for the vacant coaching position, before it could offer that position to someone else. A divided Supreme Court rejected both extremes and staked out a middle ground.

The court first rejected the district's (and trial court's) position, explaining that "[b]y using the word 'first,' the Legislature clearly intended to afford some degree of advantage or priority to 'teachers presently employed by the district,' placing them on a level *above* both noncredentialed employees currently employed by the district, as well as persons not then employed by the district in question, whether or not credentialed. Under the [d]istrict's proposed interpretation of section 44919(b), however, teachers can simply apply and be considered along with every other applicant, with no advantage.

We fail to see how this interpretation of section 44919(b) assigns any substantive meaning to the word 'first.' " (*California Teachers Assn., supra*, 14 Cal.4th at p. 634, fn. omitted.)

The court then rejected the teacher's (and the Court of Appeal's) position, explaining that requiring the school district to give any employed teacher a right of first refusal "is too rigid, for it fails to take into account the relevant qualifications and skills the school district may require of an applicant before entrusting him or her to 'supervis[e] athletic activities of pupils.' One cannot qualify for a coaching position simply by possessing a teaching credential. In short, that an applicant for a coaching position is a 'teacher[] presently employed by the district,' is not, by itself, a guarantee of the job." (*California Teachers Assn., supra*, 14 Cal.4th at p. 636.)

Instead, the court explained school districts retained "the discretion both to establish their own coaching qualifications and to evaluate coaching applicants to determine whether they meet those standards." (*California Teachers Assn., supra*, 14 Cal.4th at p. 644.) But if an employed teacher who sought the position met those established qualifications, the school district was obligated to offer the position to that teacher, and could not offer it to someone else who was not employed by it as a teacher: "In short, . . . section 44919(b) gives credentialed teachers currently employed in the district an employment *preference*, not a *guarantee* of the position they seek. Only to the extent a teacher-applicant currently employed in the school district . . . satisfies the qualifications promulgated by the district, does section 44919(b) prohibit the district from hiring a walk-on in preference to the teacher." (*Ibid.*)

█ We conclude the majority's analysis in *California Teachers Assn.* applies with equal force to Henderson's proposed claim for violation of her right to "first priority" under section 44918. Here too, the Legislature's use of the word "first" means Henderson is entitled to more than an opportunity to compete for the vacant position. What she is entitled to, in the words of the Supreme Court, is "a preferential right of reemployment." (*California Teachers Assn., supra*, 14 Cal.4th at p. 642.) But just as the majority reasoned in *California Teachers Assn.*, that should not mean the District is obligated to hire her without regard to her qualifications. The District is entitled to determine the qualifications necessary for a candidate to fill the vacant position and to assess whether Henderson meets them. But if she does, section 44918 imposes upon the District a mandatory duty to *prefer* her for the position over another candidate who does not meet the statutory requirement of temporary service. That duty restricts what would otherwise be the District's discretion to choose an outside candidate over Henderson.

Of course, as the District points out, adherence to the statutory requirement would not *guarantee* that a temporary teacher such as Henderson will actually be hired for the available position. Subdivision (e) of section 44918 provides that any permanent or probationary employees who have been "subjected to a reduction in force pursuant to [s]ection 44955" (i.e., a layoff such as occurred here at the end of the 2009–2010 school year) "have prior rights to any vacant position in which they are qualified to serve superior to those rights hereunder afforded to temporary and substitute personnel . . . ." (§ 44918, subd. (e).)

■ But the mere fact the statute gave Henderson no ultimate guarantee of employment does not mean the duty it imposed on the District to accord Henderson "first priority" was a *discretionary* one. Instead, the fact she might not have been hired even if the District had fulfilled its obligations under the statute is pertinent only in assessing whether plaintiff can satisfy the third prong of the test for establishing a private right of action, i.e., whether defendant's breach of the mandatory duty is "a proximate cause of the injury suffered." (*State of California v. Superior Court, supra*, 150 Cal.App.3d at p. 854.) And here, Henderson specifically alleged that the District advertised three available positions for the 2010–2011 school year—one full-time position and two part-time positions which combined would equal a full-time position—teaching the same subjects at the same grade level she had previously taught, and then filled those available positions with candidates who were both new to the district and had less experience than she did. Those allegations, if proved, are sufficient to demonstrate the District's alleged failure to comply with its mandatory obligation to accord Henderson "first priority" in filling these available positions was the proximate cause of her not being rehired by the District for the 2009–2010 school year.

The trial court's determination that section "44918 is not intended to protect the financial well-being of temporary teachers" fares no better. Indeed, it seems to fly in the face of the Supreme Court's characterization of that very statute as "giv[ing] the described classes of persons a preferential right of reemployment." (*California Teachers Assn., supra*, 14 Cal.4th at p. 642.) Moreover, the District's reliance on *Keech v. Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464 [210 Cal.Rptr. 7] and *Tirpak v. Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639 [232 Cal.Rptr. 61] is unpersuasive, as both cases are inapposite.

In *Keech*, the parents sought to impose liability based on the district's failure to promptly assess their son for special educational needs. The court rejected the effort, explaining the statutes which governed the district's obligations "were not designed to protect *the parents* of an emotionally or mentally handicapped child from the monetary expenses incurred in providing medical, psychological or related services for their child during the time it

takes the applicable governmental agencies to assess the child's special educational needs. Neither were these statutes designed to protect *such parents* from legal fees incurred in connection with obtaining special educational benefits, or from emotional distress suffered by the parents as a result .of delays in making the statutory assessment. In short, the injuries suffered by appellants were not the kinds of harm which the statutes were designed to prevent or assuage." (*Keech v. Berkeley Unified School Dist., supra*, 162 Cal.App.3d at p. 469, italics added.)

And in *Tirpak*, the plaintiffs were a student who had been suspended from school and denied readmission and his mother; both sought damages for the alleged educational expenses and loss of earning capacity incurred as a result of the student's suspension, as well as compensation for their attendant emotional and physical pain. To support their alleged private right of action, the plaintiffs relied on the district's alleged violation of the statutory proce-· dures designed to ensure that a student's right of access to a free education will not be arbitrarily denied. In concluding no private right of action was stated, the appellate court explained the statutes in question "are part of a comprehensive set of procedural guidelines found in the Education Code, which are administrative in nature and intended to provide due process. Since it is clear that these provisions of the Education Code were not designed to protect students and their parents from money damages resulting from 'educational' injuries, plaintiffs have failed to state facts sufficient to constitute a cause of action." (*Tirpak v. Los Angeles Unified School Dist., supra*, 187 Cal.App.3d at p. 643.)

■ Here, by contrast to *Keech*, there is no indication the statutory duty imposed by section 44918 is designed to provide a benefit to any group other than the one Henderson belongs to—temporary teachers. Moreover, it is clear the goal of the provision is to provide those temporary teachers with an advantage in obtaining employment in a vacant position as against applicants who have no prior relationship with the district, and thus to benefit them financially. And in contrast to *Tirpak*, the duty imposed is not merely procedural in nature. Instead, the right accorded to temporary teachers who have served for two consecutive years is a substantive right which guarantees them a hiring preference in the event their school district chooses to fill a vacant position at the grade level—and in cases of a departmentalized program, in the subject matter—which they have previously taught.

■ In light of the foregoing, we conclude subdivision (c) of section 44918 gives rise to a private right of action by a temporary teacher who has served at least 75 percent of two consecutive years in that capacity for the same school district, if the district fails to accord that teacher the required "first priority" when it chooses to fill a vacant position in the subsequent

school year. The trial court below erred in sustaining the District's demurrer to Henderson's cause of action based on its contrary conclusion.

## 4. *Henderson's Claims Are Not Barred by Res Judicata*

The court also sustained the District's demurrer to both Henderson's claim for violation of section 44918 and her claim for violation of FEHA on the distinct basis that they were barred by the doctrine of res judicata. It reasoned that both claims were founded on the same primary right placed at issue in the earlier administrative proceeding, and noted that all of the facts underlying these claims had occurred "by September of 2010, a full three months prior to the voluntary termination of the [earlier] proceeding." Based on that analysis, the court concluded Henderson's current claims were part of the same legal "cause of action" adjudicated in the administrative proceeding, and thus that Henderson was precluded from relitigating them here. Henderson argues the court erred in its analysis, and we agree.

### a. *Primary Rights Analysis*

The court's mistake was in its characterization of the "primary right" underlying Henderson's various claims. As explained most recently by our Supreme Court in *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788 [108 Cal.Rptr.3d 806, 230 P.3d 342]: "To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' [Citation.] Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. "Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . ." ' " (*Id.* at pp. 797–798.)

In the trial court's view, the primary right at issue in both the administrative proceeding and the claims Henderson currently asserts was her right to be "reemployed for the 2010/2011 school year." But a plaintiff's primary right is defined by *the legally protected interest* which is harmed by defendant's wrongful act, and is not necessarily coextensive with the *consequence* of that wrongful act. (See *Daugherty v. Board of Trustees* (1952) 111 Cal.App.2d 519 [244 P.2d 950] [writ of mandate to force reinstatement of employment is based on different primary right than cause of action for damages based on *nonpayment* of salary, although both arose out of employment misclassification]; *Craig v. County of Los Angeles* (1990) 221 Cal.App.3d 1294, 1301–1302 [271 Cal.Rptr. 82] ["the primary right in the mandate actions involved the right to be employed as a harbor patrol officer. The later action to recover damages because of the denial of that right

involves a different primary right"].) Nor is it defined by the *remedy* the plaintiff seeks. (*Sawyer v. First City Financial Corp.* (1981) 124 Cal.App.3d 390, 402–403 [177 Cal.Rptr. 398] [claim for breach of promissory note is based on different primary right than claim for conspiracy to conduct sham foreclosure sale, even though both claims sought monetary damages equal to amount of note]; *Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1837 [35 Cal.Rptr.2d 348] ["the right to have contractual obligations performed is distinct from the right to be free from tortious behavior preventing collection of a judgment"]; see *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 928 [134 Cal.Rptr.2d 101] [plaintiffs state two distinct causes of action for interference with contract when they allege defendants' act wrongfully interfered with *two separate* contracts].)

### b. *Henderson's Right to Proper Classification*

■■ As exemplified by *Daugherty v. Board of Trustees, supra,* 111 Cal.App.2d 519, a public school teacher has a legally enforceable right to be properly classified as an employee. There, a teacher sought to rectify the consequences of her misclassification as a probationary, rather than permanent, employee. She first petitioned the trial court for a writ of mandate compelling the school to reinstate her employment with the appropriate "permanent" classification; after she prevailed and was reinstated as a permanent employee, she then brought a second action to recover the salary owed to her on account of her permanent status. The trial court awarded the salary and the school appealed, arguing res judicata barred the teacher from recovering the salary in a separate action. The Court of Appeal disagreed: "The first mandamus proceeding was to compel defendants to reinstate petitioner . . . . Its purpose was to compel admission of petitioner to the enjoyment of a right to which she was entitled, and from which she was wrongfully excluded by defendants as public officials. [¶] The present proceeding is to compel the performance of an act which the law specifically enjoins as a duty resulting from the office of defendants, viz: the payment of petitioner's salary which they had previously fixed but refused to pay after her demand. [¶] The causes of action in the two proceedings were thus separate and distinct, although arising out of the same subject matter." (*Id.* at p. 522.)

What *Daugherty* makes clear is that a public school teacher's right to be properly classified, and thus to enjoy the appropriate " 'level of procedural protections to which a teacher is entitled should he or she be dismissed or nonreelected' for the next school year" (*McIntyre v. Sonoma Valley Unified School Dist., supra,* 206 Cal.App.4th at p. 174), qualifies as a distinct primary right, and thus that a school district's alleged violation of that right can be litigated separately from other claims of alleged wrongdoing by the District.

And in this case, it appears Henderson's right to be properly classified was the only individual claim she was allowed to make in the administrative proceeding. Her complaint alleges the administrative hearing resulted from the District's decision to serve layoff notices to hundreds of employees and that she was but one among the 173 teachers whose objections to the layoff decision were considered. She does not allege the administrative hearing included any consideration of her individual merit as a teacher or the District's satisfaction with her services.

Moreover, to the extent the limited nature of Henderson's participation in the administrative proceeding was not alleged with sufficient clarity in the complaint, she made that limitation explicit in her opposition to the District's demurrer and even supported it with documentation provided by the District. Even assuming those documents were not appropriate subjects of judicial notice, it is sufficient for purposes of demurrer that Henderson demonstrated she is prepared to allege such facts. " '[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' " (*Paragon Real Estate Group of San Francisco, Inc. v. Hansen* (2009) 178 Cal.App.4th 177, 181–182 [100 Cal.Rptr.3d 234].)

Significantly, the documents of which the District sought judicial notice in support of its demurrer do not establish anything to the contrary. In fact, Henderson's petition for writ of mandate, challenging the result of the administrative hearing, actually supports her characterization of the limited claim she asserted therein. Specifically, her petition describes the nature of the action as one "*to reclassify* Petitioner as at least a 'probationary employee' . . . with a seniority date of March 14, 2008, and to reinstate Petitioner's employment with [the District] as a 'permanent' employee . . . for the 2010–2011 academic school year." (Italics added.) Thus, the only thing that could be conclusively determined from this record is that Henderson's subsequent dismissal of that petition for writ of mandate, with prejudice, would bar her from further litigating any claim based specifically on the assertion the district had *improperly classified her* as a temporary teacher.

c. *Henderson's Statutory Right to Priority in Rehiring*

Henderson's cause of action for violation of section 44918 is not based on any assertion she had been *improperly classified* as a temporary teacher. To the contrary, the cause of action is explicitly *grounded on* her classification as a temporary teacher. Henderson's claim is that the District violated her statutory right, as a temporary teacher with two consecutive years of employment, to be accorded "first priority" in rehiring. Consequently that claim,

which is distinct from her earlier claim of entitlement to either probationary or permanent classification, states a separate legal cause of action which is not barred by res judicata.

### d. *Henderson's Right to Be Free from Discrimination Under FEHA*

■ Additionally, as cogently explained in *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475 [102 Cal.Rptr.3d 431] (*George*), it is well settled that a claim alleging employment discrimination in violation of FEHA is based on a plaintiff's distinct primary right to be free from discrimination. In *George*, the appellate court rejected the assertion that a public employee's unsuccessful civil service claim for wrongful suspension barred her subsequent lawsuit for retaliatory suspension in violation of FEHA. It determined that the employee's claim of wrongful suspension actually invoked two separate primary rights: first, the employee's "right to continued employment," protected by the civil service system, and second, her separate "right to be free from invidious discrimination and from retaliation for opposing discrimination," protected by FEHA. (*George*, at p. 1483.) "The [civil service board's] responsibilities are directed at ensuring that state employment is based on merit while FEHA was enacted to eliminate discrimination and to vindicate civil rights. [Citation.] These are distinctly different rights with different harms even though there may be overlap in the two statutory schemes. [Citation.] For this reason, there is no requirement that a state employee raise the FEHA issue during the administrative review process, and the doctrine of res judicata does not act as a complete bar to a FEHA action when an employee seeks review through an alternative administrative remedy available as a consequence of the employee's civil servant status." (*Id.* at pp. 1483–1484; see *Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1364–1365 [53 Cal.Rptr.2d 481] [noting FEHA itself establishes multiple distinct primary rights].)

Of course, if an employee actually does litigate a claim of discrimination as part of an administrative review process, an adverse determination of that claim might be accorded *collateral estoppel* effect in a subsequent case. (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481–486 [111 Cal.Rptr.2d 870].) But as we have already noted, our record contains no indication Henderson even had the opportunity to raise that issue in the administrative proceeding, let alone that she actually did so.

Because Henderson's cause of action alleging the District discriminated against her on the basis of race in violation of FEHA was based on her distinct primary right to be free from such discrimination—a right which was not adjudicated in the earlier administrative proceeding—that cause of action is not barred by res judicata.

## 5. *Henderson's Current Claims Are Not Barred by Collateral Estoppel*

The District also argued that even assuming the administrative proceeding did not operate as a complete bar to the claims asserted by Henderson in this case, it nonetheless resulted in a binding determination by the ALJ that the District had "good cause not to reemploy her for the 2010–2011 school year." According to the District, that determination is entitled to preclusive effect herein and demonstrates Henderson cannot prevail on either of her current claims. We disagree.

 Collateral estoppel, or "issue preclusion," prevents "relitigation of issues argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223], fn. omitted.) "Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation *must be identical* to that decided in a former proceeding. Second, this issue must have been *actually litigated* in the former proceeding. Third, it must have been *necessarily decided* in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Ibid.*, italics added.) Collateral estoppel is not limited to issues previously litigated in court. It also applies to "issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity." (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 242 [244 Cal.Rptr. 764].)

The flaw in the District's argument is that it apparently equates the ALJ's determination that the District had good cause to terminate Henderson's employment within the process of implementing layoffs, with a determination that the District thereafter had "good cause not to reemploy [her]" in another position that became available for the subsequent year. In effect, the District is suggesting the administrative proceeding actually adjudicated Henderson's individual merit as a teacher. But there is nothing in either Henderson's complaint, or the documents of which the District sought judicial notice, that would support such an inference. As far as we can discern from the record, the administrative proceeding addressed only the propriety of the District's economic decision to implement a layoff and the order in which that economic decision would affect individual teachers. There is no indication the ALJ engaged in any evaluation of the relative merit of individual teachers or had any occasion to determine whether Henderson would be deserving of reemployment in the subsequent school year, if an appropriate position became available. Under these circumstances, the District has demonstrated no basis for application of collateral estoppel.

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court with directions to overrule the District's demurrer. Henderson is to recover her costs on appeal.

Moore, J., and Thompson, J., concurred.

A petition for a rehearing was denied April 10, 2013, and respondents' petition for review by the Supreme Court was denied June 26, 2013, S210175.